Let a decree be drawn dismissing the bill, with costs.

---

### MERRIMAC MATTRESS MFG. CO. v. BROWN.

(Circuit Court, D. Massachusetts. April 7, 1903.)

No. 1,575.

1. PATENTS—ANTICIPATION—SUFFICIENCY OF PROOF.

The oral testimony of witnesses, each of whom testifies from his recollection of a different, unpatented article seen by him many years before, is insufficient to establish anticipation, under the rule that in such cases every reasonable doubt is to be resolved in favor of the patent.

2. SAME—INFRINGEMENT—COUCH-BED.

The Leighton patent, No. 667,916, for an interconvertible couch-bed, comprising two complete, interlocking, laterally sliding sections, constructed and arranged to permit their separation into two independent beds without dismantling either of them, shows invention, and was not anticipated. Claims 5, 6, 7, and 8 *held* infringed.

In Equity. Suit for infringement of letters patent No. 667,916, for a couch-bed, granted to Eugene R. Leighton February 12, 1902. On final hearing.

Milton E. Robinson, for complainant.

Horace Van Everan, for defendant.

HALE, District Judge. This suit is brought for infringement of United States letters patent No. 667,916, dated February 12, 1902, issued to the complainant in this case, on the invention of Eugene R. Leighton, for a new and useful improvement in couch-beds. Claims 5, 6, 7, and 8 of this patent are brought in issue in this suit, and are alleged to be infringed. These claims are as follows:

"(5) An interconvertible couch-bed, comprising two complete interlocking laterally sliding sections, each having all of its parts, including the mattress support, permanently connected, the sections being relatively constructed, and arranged to permit their separation into two independent beds without dismantling either of them.

"(6) An interconvertible couch-bed, comprising two complete, interlocking sections, adapted to be nested one within the other, each section having side-bars, end-bars and legs, all permanently connected together, and each section being separable from the other into an independent bed.

"(7) An interconvertible couch-bed, comprising two complete, independent metallic beds, adapted to be arranged in interlocking relation with the legs of one bed between the side-bars of the other bed, and the end-bars of the first-mentioned bed above the side-bars of the second-mentioned bed, all without disconnecting any of the parts of either of said beds.

"(8) An interconvertible couch-bed, comprising two complete, independent beds, each having side-bars, legs, end-bars, and a mattress stretched between

said end-bars, all of said parts being permanently connected together, said beds being adapted to be arranged in telescoping, interlocking relation, with the legs and the end-bars of one bed located respectively between the side-bars and the side-bar and the mattress of the other bed, whereby one bed may be moved laterally a limited distance relatively to the other bed, or may be completely separated therefrom, without dismantling any of the parts of either."

The object of the invention is shown by the specification to be:

"To provide an article which can be converted from a bed to a couch, and vice versa, without the employment of operating mechanism, or other power-transmitting devices, whereby said article may be greatly simplified in construction."

· The inventor further describes his invention as follows:

"Referring to the drawings, it will be seen that the couch-beds are constructed in two sections, one of which telescopes within the other, and I shall refer to them as the 'main section' and the 'sliding section,' respectively. * * * As thus far described, the main frame is capable of use by itself without the addition of the sliding frame. The sliding frame is also capable of use by itself, and it may be disconnected from the main frame. * * * By tilting the inner sides of the two sections, the sections may be separated without dismantling either of them; being each a complete bed without further additions. This is a new feature with me, for, as far as I am aware, I am the first to have provided an interconvertible couch-bed, comprising two interlocking nesting sections, which may be separated without dismantling either of them, and each of which, when separated, forms an independent bed. * * * From this description, it will be seen that the article described may be converted from a bed to a couch, and vice versa, by simply moving the sliding section laterally; and, as each section is supported independently of the other, little or no effort is required to move the sliding section upon its own casters. One of the wire mattresses is on a plane a little below the other, but the hair or cotton mattress which is placed upon them may be thicker upon one side than the other, to compensate for the difference in height of the two spring mattresses."

Upon careful examination of the specification and claims, the court finds sufficient in them to constitute invention. The defendant has not filed a brief, nor appeared in court to argue the case. The answer sets up many defenses. The only defenses, however, about which any contest would, we think, be likely to arise, under the evidence, are noninfringement and anticipation. In the matter of noninfringement, the testimony shows that the bed produced in court as the infringing bed was bought of the defendant. Upon an examination of it, it is found to be ruder in its construction than the beds made under the patent in suit, and it is clear that it does not infringe some of the claims in the patent. But it is clear, also, from an examination of it, that it is an "interconvertible couch-bed, comprising two complete, interlocking, laterally sliding sections, each having all its parts, including the mattress support, permanently connected, the sections being relatively constructed and arranged to permit their separation into two independent beds without dismantling either of them." Upon an examination of the bed, we think that in the sale of this bed the defendant did infringe claims 5, 6, 7, and 8 of the patent in suit. To be sure, slight use by the defendant of the patent is shown; but the courts have said that complainants are at liberty to sue a wrongdoer, whether he be manufacturer, seller, or user. Birdsell v. Shaliol, 112 U. S. 485, 5 Sup. Ct. 244, 28 L. Ed. 768; Tuttle v. Matthews (C. C.) 28 Fed. 98.

Anticipation is the leading defense upon which testimony is offered. It is set up that this invention was in public use many years ago, in the shape of certain trundle-beds that ran under and were stored under full-sized beds. The witness Soule describes such a trundle-bed seen by him 25 years ago, when he was a boy of 15. The witness Rafferty also testifies to a similar trundle-bed seen by him 45 years ago. This bed pulled out at the foot, so that the two beds stood end to end. The witness Ford also testifies to another bed, used by his mother, pulling out from the foot, and standing foot to foot with the larger bed. The witness Brown testifies to a bed in Russia, seen by him when a boy, about which he testifies vaguely and from distant recollection. This bed was a combined bench and bed, and, if distinct and accurate description could have been furnished, it might have been found to have involved much that is covered by this patent. But there is not sufficient proof from recollection about any of the beds claimed to be anticipatory to show that they were "interconvertible couch-beds," or that they comprised two "complete, interlocking, laterally sliding sections." We find, however, that this case is disposed of on the question of anticipation by the principle announced by the Supreme Court in the Barbed Wire Patent Case, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154. Mr. Justice Brown commented very fully and clearly upon certain unpatented devices claimed to be anticipatory of the patent in suit in that case, the existence of which was proved only by oral testimony. He says:

"In view of the unsatisfactory character of such testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory, and beyond a reasonable doubt. Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information. The very fact, which courts, as well as the public, have not failed to recognize, that almost every important patent, from the cotton gin of Whitney to the one under consideration, has been attacked by the testimony of witnesses who imagined that they had made similar discoveries long before the patentee had claimed to have invented his device, has tended to throw a certain amount of discredit upon all that class of evidence."

Another leading case upon this subject is Coffin v. Ogden, 18 Wall. 120, 21 L. Ed. 821, in which the court holds that the burden of proof rests upon the party setting up an unpatented article as proving prior use, and holds that "every reasonable doubt should be resolved against him."

Applying the rule of these cases to the case at bar, the court reaches the conclusion that the evidence offered is of too vague a character to establish anticipation. The court finds, upon the evidence offered, that the patent is valid, and has been infringed by the defendant.

Decree for complainant.